Good morning, your honors. I may please the court. My name is Sabrina Raghi on behalf of petitioner Ms. Lucia Maria Jose, whom I'll be referring to as Ms. Jose. With the court's permission, I will be reserving two minutes for rebuttal and I will be checking my time. Okay, great. Thank you. The issues before the court are whether the government rebutted the presumption of well-founded fear of persecution and whether there was a due process violation. It is our position that the government failed to rebut the presumption as it is not supported by substantial evidence and that there was a due process violation. And for the following reasons, we request this court to reverse the board's ruling and remand the case for further proceedings. To my first point, the government may rebut this presumption if it establishes the preponderance of the evidence that there is a change in circumstances that the applicant no longer has a well-founded fear of persecution and that relocating to another part of the applicant's country would be possible to avoid future persecution. Regarding fundamental change in circumstances, the BIA wrongly held that Ms. Jose's claim was defeated based on only two changed circumstances. In its decision, it relied on her father passing away in 2013 and her not having suffered three years of harm after his death. However, the court failed to recognize that the persecutors were also her local community with strict Muslim ideals and religion. She is still Christian of the Christian faith and her not she didn't suffer the three years of harm did not undermine her fear of persecution alone because her declaration clearly states that she did stay hidden from fear. It's on her last page and there is circumstantial evidence to show that the two neighbors did sexually abuse her as well and these two neighbors knew about what had happened to her. Referring to the persecution. What do we make of her admission to the asylum officer that she would not be harmed on account of her religion today? Well, your honor, that statement did not directly state that she could relocate safely on account of her religion. She just simply stated a mere statement that she can, an odd statement as well, that she can live in peace and tranquility. However, that one mere statement is not a full and well-reasoned analysis of whether it was a reasonable internal relocation or whether she even understood what she was even being asked of. There was no analysis in that discussion of internal relocation during her credible fear interview and frankly there was no discussion in her, on the record. Counsel Judge Gould, if I may interject a question. I thought that when she made that statement that she could not be harmed on account of her religion, that that was a response in part to the fact that her parents, who were the persecutors, had passed away and when they were persecuting her, there was some sort of public display of their displeasure and that she might have been thought to have some risks in the local community because of that. But that her statement saying that she didn't have that risk negated that possibility. I thought the relocation related to this Fernando character who threatened her. If I understood correctly, Your Honor, in this case, Ms. Jose, the only time that she was asked of whether she could reasonably relocate was during her credible fear interview and in that she was first asked whether she can relocate and she gave a very vague statement to the point where the asylum officer had to ask again. And a reasonable person reading these four questions in her credible fear interview, there's nothing in there in regards to her religion or whether she can reasonably relocate. And per the federal regulations, there has to be some sort of consideration of the relevant circumstances. And this mere statement, vague and real and statement is, does not consider whether the country conditions, it does not consider whether her persecutors can locate her. She's still Christian. She still lives in a Muslim majority community who did persecute her and whether her actual ability to relocate. And this was before she filed her declaration as well. So it's, there was, that mere statement is not enough. There's more substantial evidence to the contrary. Hi, counsel. Good morning. I have a follow up on Judge Gould's question. And for me, it also relates to the due process issue and the prejudice. I have some concerns about the due process issue. I want to hear your views on that. But while you're on this point, I mean, you know, there was a lot in the record about her saying everything is okay. And she wasn't that worried, all the points that were discussed so far. Doesn't that kind of undercut any showing a prejudice on the due process side as well? Your Honor, it is, during the, I think Your Honor is referring to the credible fear interview where she did not, I see that my, my time is running out. Can I please answer the question and I'll give you some extra time at the end. Okay, thank you. So the credible fear interview, she, she wasn't represented. She, it was, the credible fear interview was not a well reading it. Yes, she may have stated that she felt safe. But those questions for internal relocation, a reasonable reading of it, she had to be repeated several times, this question. And she even had to be repeated whether she understood what the questions were, the last page of the credible fear interview. So it is, it is unknown whether she really understood these questions in reality. And in the due process violation has to do, it is our position that she was really prevented from fully presenting her case when her declaration was the only thing admitted. And it was a Spanish declaration, which the judge even admitted that it was in Spanish, it had errors. And throughout the entire proceedings, everything was done in, with the Portuguese interpreter. And so that's something I didn't understand. I mean, there seemed, first of all, the agreement to do the Grava method and then to declarations in the wrong language. I'm just wondering about, there's not an ineffective assistance of counsel claim in here. Your Honor, I did not have the case when we, when I received the case, it was already beyond the 90 days before a motion to reopen for the ineffective assistance of counsel. And if I understand, based on the record, I see that also the previous attorney also received it after the 90 days. So it is, it is definitely something that we, I would have considered. However, it is still our position that the judge also had a, had a duty to look at the with Grava, that case, there was extensive amount of research for them to be able to use that record. Here, there was not even, there was one declaration in Spanish and there was, yes, there was country conditions, but none that we actually related to religious persecution in Mozambique. So there was no actual fact finding. And here, a full examination is essential for the aspect of asylum process and the integrity of the process. And that did not happen here, unfortunately. So Your Honor, for the foregoing reasons, we respectfully request that this court reverse the lower courts and remand for further proceedings. All right. Thank you, counsel. Ms. Lesnow? Good morning, Your Honor. It's Jessica Lesnow on behalf of the Attorney General, and may it please the court. The court should deny the petition for review here because substantial evidence supports the agency's decision finding that the denial of petitioner's asylum application, that in denying petitioner's asylum application, the Department of Homeland Security had rebutted any presumption of a well-founded fear. She's also not demonstrated a due process violation, much less that she was prejudiced. Turning first to the substantial evidence of the asylum denial, the Department of Homeland Security successfully rebutted any presumption of a well-founded fear, where they demonstrated that petitioner's personal circumstances had fundamentally changed, and that she could reasonably relocate within Mozambique to avoid future harm. Nor did petitioner establish that being a victim of unfortunate and opportunistic crime occurred on account of a protected ground. Additionally, petitioners failed to prove a due process violation as a result of her prior counsel's stipulated agreement to rely upon the procedures set forth by this court's decision in Graba for presenting her claim. And in any event, such stipulation did not result in prejudice to the petitioner. Let me just try to thank you. Let me just ask you about that, because I am bothered by this due process issue. The record seems to indicate that Jose's relationship with her lawyer was completely falling apart right before the immigration hearing. He couldn't, or she couldn't get the declarations in the right language. The record indicates that Jose wanted to replace her with a different lawyer. Looks like the lawyer told the IJ that she wanted to withdraw. I think it's a female lawyer. Wanted to withdraw, and then everything just gets submitted on the briefs. I mean, to my eye, this was a breakdown in the attorney-client relationship that Jose kind of got left holding the bag for. And she says she has more she wanted to add, and it doesn't sound like her counsel helped her. So why shouldn't she have a chance to go and get a second bite at that on due process grounds? Certainly, Your Honor. And I think I'd like to address first the statements that you made as to the timeline here with regard to the incidents with former counsel. So on April 25th, 2017, is when Petitioner appeared for a second time with former counsel Vanessa Gonzalez. And the parties then agreed to stipulate to proceed with the Graba method. And then the Petitioner. So then after that, on May 5th, 2017, the immigration judge, I'm sorry, let me back up. Also on that date, Petitioner submitted a declaration in her own handwriting in Spanish language. After that date, then on May 5th, the immigration judge enters an order requesting a supplemental declaration. Now, there's some statements about whether this should have been a new declaration, but it seems that the immigration judge's primary concern was the translation. So the court requested that a new translation be submitted. Then afterwards, the former counsel files this letter with the court, evidencing that she had attempted to go to the facility where Petitioner was being detained at the time to obtain the new declaration on several instances. And at that point, Petitioner stated that she was not feeling well, could not do the declaration. So then, as you stated, Petitioner's prior counsel submitted a new translation, though there was never a new declaration itself. Now, getting to the due process, the question of the due process violation here, we know that the Fifth Amendment guarantees due process in immigration proceedings. And that means this court has held that Petitioner is entitled to a full and fair hearing on her claims and opportunity to present evidence on her behalf. So the violation occurs where the proceedings were so fundamentally unfair that the Petitioner was prevented from doing so, from reasonably presenting her case. That's simply not what happened here. The immigration judge, beginning in the record at pages 156, and then importantly on pages 158 through 160, the immigration judge goes to great lengths after the attorneys have already stipulated to proceed with GRABA to ensure that Petitioner has reviewed the declaration with her attorney, that she reviewed it in her native language, that it was correct, and that it was complete. She wasn't prevented by the immigration judge in any way from presenting her case here. And Petitioner hasn't demonstrated that she was prejudiced by this. I think it's also important to note the vagueness of Petitioner's briefing on this issue because we're unsure who committed this alleged due To date, there's been no claim of ineffective assistance raised against prior counsel that this court can look at. And we might argue that the ineffective assistance of counsel aspect of this due process claim is sort of inextricably intertwined. But considering all of the circumstances here, Petitioner has failed to show prejudice because she's saying that had she been allowed to present oral testimony, she would have stated that these incidents that occurred, the incident with a gentleman named Fernando, the incident with the two young males in her community, on account of her religion, the fact of the matter is Petitioner has failed to specifically describe the contents of any evidence that she would have provided or how it would have impacted the agency's determination. And so because she's failed to demonstrate that, she's failed to show how she was prejudiced by any alleged violation. In sum, Your Honors, the Board reasonably found that the Department of Homeland Security rebutted any presumption of Petitioner's well-founded fear of persecution in Mozambique. She has not demonstrated a due process violation, much less that she was prejudiced. And for the reasons discussed today and those set forth in the government's petition for review. Thank you, counsel. Ms. Rocky, I will give you about a minute to rebut. Thank you, Your Honor. I have one point to make in regards to the due process violation. The fact that there, okay, so by admitting this declaration, the immigration judge did prevent Ms. Jose from presenting more detailed evidence in support of her claim. There was the fact that he even stated in his order about the fact that everything was done in Portuguese with a Portuguese translator, and he still admitted a Spanish declaration shows that he was not only requesting a new translation, he was requesting a new declaration in her native language. And the prejudice is shown with the conclusory statements that it is... I have two questions. One is, one of the problems was they, she didn't establish Fernanda's motivation for persecution. And as I understood it, one of the things had she been able to testify would have been, she could have established a nexus to religion, correct? Yes, Your Honor. Yes. So that's what, that's, that is why you're contending she was prejudiced, right? Yes, Your Honor. Absolutely. Is there anything else? Is there anything else that she could have established having she been able to testify in her native language or write a declaration in her native language? She would have been able to also been given the opportunity to explain any of her conclusory statements that were in her declaration in regards to the two neighbors who sexually abused her as well, who knew everything about her. She would have been able to provide a background on her Muslim majority community that she resides in. She would have been able to expand on all of these aspects that are so important in her claim. Your Honor. Okay. That's prejudice. Are there any changed circumstances you're aware of that would excuse the 90 day rule for reopening? Changed circumstances as it relates to her, what is happening currently in Mozambique? Yes. Your Honor, the country conditions do show that there are attacks on a religious, I mean, this is out of, this is not on the record, but there is a, some attacks happening that are at the hands of possibly ISIS who are attacking other Christians or Catholics in the northern part of Mozambique as well. Shouldn't that have been in the record? Your Honor, there was in the initial record? Yes. Yes. Your Honor, unfortunately there was in the 2016 country conditions that were filed initially, that was not in the record. This recently happened. Okay. I mean, after, after she was able to file these country conditions. All right. Do you want to sum up? Excuse me? Do you want to sum up? Thank you, Your Honor. Yes. So it is our position that she absolutely, that there was no fundamental change in circumstances of who and reasons analysis would have shown the contrary to what the, what the BIA decided. And there was prejudice on the part of the immigration that Ms. Jose was unable to provide the explanations of everything in her  All right. Thank you, counsel. Thank both of you. Jose versus Garland will be submitted and we'll take up Lee versus Garland.
judges: Wardlaw, Gould, Donato